UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES E. LANG,

                Petitioner,

-vs-                                                          Case No.  8:04-cv-2547-T-17EAJ

SECRETARY, DEPT. OF CORRECTIONS,

                Respondent.

_____

## **ORDER**

This cause is before the Court on James E. Lang's 28 U.S.C. § 2254 petition for writ of habeas corpus.  Lang challenges two armed robbery convictions arising from the Thirteenth Judicial Circuit, Hillsborough County, Florida in case no. 99-06457.  A review of the record demonstrates that, for the following reasons, Lang's petition must be **DENIED.**

### Background

On April 26, 2001, Lang was found guilty as charged, after a jury trial, of two counts of armed robbery with a firearm in case no. 99-06457. He sentenced as a prison releases reoffender to concurrent prison terms of 30 years. Lang appealed the convictions and sentences, representing himself on direct appeal. On December 11, 2002, the state district court of appeal per curiam affirmed his convictions and sentences case no. 01-2222. *Lang v. State*, 838 So. 2d 1158 (Fla. 2nd DCA 2002)[table]. Rehearing was denied January 30, 2003. Lang did not pursue certiorari review in the United States Supreme Court.

Lang filed a pro se 28 U.S.C. § 2254 petition dated February 5, 2003, attacking his armed robbery convictions. He took a voluntary dismissal of that petition in case no. 8:03-

cv-224-T-17TGW, which was dismissed without prejudice by order rendered September 11, 2003.

On or about September 24, 2003, Lang filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. A number of pro se applications by Lang followed. The September 2003 and ensuing motions for postconviction relief were denied without prejudice [based on pleading requirements], with the exception of a December 19, 2003, amended rule 3.850 motion and a supporting memorandum of law dated January 5, 2004.

By order rendered April 6, 2004, Lang's December 19, 2003, rule 3.850 motion was denied without an evidentiary hearing, except with regard to a claim relative to a judgment for attorney fees. (Resp. Ex. 7, including December, 2003, rule 3.850 motion and order thereon). Lang appealed the summary order, and on November 10, 2004, the state district court of appeal per curiam affirmed without written decision in case no. 2D04-2156. *Lang v. State*, 892 So. 2d 1029 (Fla. 2nd DCA 2004)[table]. Following denial of rehearing, the mandate issued January 25, 2005.

By then, Lang had filed the pro se 28 U.S.C. § 2254 petition dated November 19, 2004, in the present case. During the pendency of this proceeding, Lang filed another pro se rule 3.850 motion dated July 20, 2005, framed in terms of newly discovered evidence. By nonfinal order rendered April 12, 2006, the state trial court declined to revisit issues raised previously and directed a response from the State only as to Lang's claim that newly discovered evidence entitled him to file his successive rule 3.850 motion. Following the state's response and Lang's reply, the state trial court summarily denied the 2006 rule

3.850 motion without an evidentiary hearing with the exception of one claim regarding the imposition of attorney fees. The state trial court, by final order rendered May 25, 2006, directed that the judgment for attorney's fees stricken.

Lang appealed the order, and on November 15, 2006, the state district court of appeal per curiam affirmed in case no. 2D06-3519. *Lang v. State*, 945 So. 2d 516 (Fla. 2nd DCA 2006)[table]. The mandate issued January 23, 2007.

Lang then timely[1] filed the present federal petition raising four grounds for relief.

## Standard of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it

---

[1] The AEDPA imposes a one-year limitations period on all habeas corpus petitions, which, in this case, began running the day after expiration of the time Lang had to seek certiorari review following denial of rehearing of the silent affirmance in his direct appeal. See 28 U.S.C. § 2244(d)(1)(A). The time during which a properly filed application for State post-conviction or other collateral review is pending shall not be counted toward any period of limitation under the AEDPA. See 28 U.S.C. § 2244(d)(2); *Wade v. Battle*, 379 F.3d 1254, 1259 (11th Cir. 2004). To be "properly filed," an application must meet the filing deadlines and time limitations on delivery. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). Lang's initial rule 3.850 motion does not qualify as a 2244(d)(2) application as it did not comply with Florida's filing requirements regarding a proper oath. Nonetheless, Lang's petition was constructively filed within one year after his conviction and sentence became final, tolling the period of time his December, 2003, rule 3.850 motion -- a § 2244(d)(2) tolling application -- was pending in the Florida courts.

must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Discussion

### Ground One

Lang contends he was denied his Sixth Amendment right to counsel. Lang does not claim he not informed of his right to counsel pursuant to *Faretta v. California*, 422 U.S. 806 (1975). Nor does he challenge the initial inquiry when he unequivocally exercised his right of self-representation prior to his trial. Rather, the thrust of ground one is that Lang was not *again* informed of, and did not then waive, his right to counsel, when he appeared for his jury trial.[2]

To the extent Lang relies on his state-law-based arguments, this Court does not have subject matter jurisdiction to address those arguments. *See Estelle v. McGuire*, 502 U.S. 62 (1991)(federal habeas corpus relief does not lie for errors of state law). Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78 (1983).

---

[2] The ground is exhausted only to the extent raised by Lang as a constitutional claim on direct appeal. This Circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.)(claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922, 104 S. Ct. 290, 78 L. Ed. 2d 266 (1983); *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 111 S.Ct. 96 (1990)(under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion). The postconviction court expressly applied Florida's rules in this regard to his rule 3.850 claim. Under the circumstances, the silent affirmance is presumed to rest on independent and adequate state procedural grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). The state court finding of the procedural bar, a matter of state law, is conclusive on this Court. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) (rejecting contention that court could make an independent review of whether state had correctly applied its procedural default law).

The limited inquiry under the AEDPA is whether the state court decision rejecting Lang's claim by the silent affirmance "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court ... or ... was based on an unreasonable determination of the facts...." 28 U.S.C. Section 2254(d). Lang has not made this threshold showing.

When knowingly and intelligently made, the accused may waive the right to counsel and elect to represent himself in a criminal trial. *Faretta*, 422 U.S. at 835. The accused must be clearly informed as to the disadvantages of self-representation, so "the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (quotation omitted); *see also Patterson v. Illinois*, 487 U.S. 285, 298 (1988). The ultimate test is not the trial court's express advice, but rather the defendant's understanding. *See Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065 (11th Cir. 1986). As long as the record establishes he understood the risks of self-representation and freely chose to face them, the waiver may be valid. *Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir. 1991).[3]

In Lang's case, the state record affirmatively shows Lang had an ongoing interest in representing himself and was literate, competent, and understanding, and was voluntarily exercising his informed free will. *Faretta*, 422 U.S. at 835. The state trial court thoroughly inquired of Lang at an August 10, 2000, hearing, at which Lang assured the trial court he

---

[3] Circuit precedent teaches the ideal method of assuring that a waiver of counsel is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation. *See United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991). This helps to establish the defendant unambiguously has chosen to represent himself. *Cross v. United States*, 893 F.2d 1287, 1291 (11th Cir. 1990). "While a pretrial hearing is preferred, it is not required. . . . The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the 'rare cases [where] the record may support a waiver.' " *Cash,* 47 F.3d at 1088 (quoting *United States v. Fant*, 890 F.2d 408, 409 (11th Cir. 1989)(per curiam))(citations omitted).

was not dissatisfied with his appointed counsel and wanted to exercise his right of self-representation. (Resp. Ex. 1, Supp T 393). The colloquy reveals, among other things, Lang was not being treated with drugs nor suffering from mental disability, he had attended two years college and taken a paralegal course during a prior incarceration, and Lang had previously represented himself some six times.[4] (Resp. Ex. 1, Supp T 394-396) It is objectively reasonable to conclude Lang, having represented himself numerous times previously, was aware of the disadvantages and dangers of self-representation. Nonetheless, the state trial court alerted him to the dangers of self-representation, as illustrated by the court's cautioning him as to the import of Lang's "slip" in stating the armed robbery happened in 1998. (Resp. Ex. 1, Supp R 397).

It is also an objectively reasonable application of *Faretta* to conclude that the inquiry of the state court was sufficient to determine Lang was aware of the dangers and disadvantages of self-representation and he knowingly and intelligently relinquished benefits associated with the right to counsel. *Faretta,* 422 U.S. at 835. Afforded standby counsel (V 1 R 61), Lang, before trial, obtained dismissal of the standby counsel (V 1 R 78) -- further supporting the objectively reasonable determination he knowingly was maintaining his waiver of the right to counsel. To the extent Lang faults the state trial court for not renewing an offer of counsel again on trial morning under state procedures, the affirmance on direct appeal is the end of the matter on whether or not he demonstrated reversible error

---

[4] Although the court reporter reported Lang's response as indicating he was convicted five of the times (Resp. Ex. 1, Supp T 396), there appears to be a scrivener's error in transcribing Lang's answer as "convicted" rather than "acquitted." (Supp R 396) The state court's ensuing remark, "the other time, you went down the tubes," together with Lang's answer indicating the case was on appeal (Supp R 397) indicates Lang was conveying he had prevailed on all but one of prior cases pro se.

under Florida law. Upon AEDPA review, it is objectively reasonable to conclude the Florida state trial court was not constitutionally required to perform a second or further inquiry into whether Lang's waiver of the right to counsel remained knowing and voluntary before permitting him to proceed pro se at trial.[5] In view of the totality of the circumstances, it can be objectively concluded that Lang was aware of the risks of self-representation and "he [knew] what he [was] doing and his choice [was] made with eyes open." *Faretta*, 422 U.S. at 835. Since there was a proper inquiry regarding Lang's waiver of counsel for the jury trial, the state decision resulted in an objectively reasonable application of *Faretta*. Ground one does not warrant habeas corpus relief.

## Ground Two

Lang contends he was denied due process because the state trial court did not renew the offer of counsel at trial under the Florida state supreme court's precedent. Although this ground is framed in constitutional terms, subject matter jurisdiction does not lie to address ground two. A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78 (1983), *reh'g denied*, 465 U.S. 78 (1984). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *See Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976).

---

[5] *See e.g., Thomas v. Carroll*, 424 F. Supp. 2d 738, 748 (D. Del. 2006)(court is not required to determine constantly if defendant's waiver of right to counsel continues to be voluntary once it has already made an initial determination such a waiver is knowing, intelligent, and voluntary).

Moreover, this ground is procedurally barred in its entirety because Lang did not claim at trial and then on direct appeal that by the state trial court's renewing the offer of counsel at trial, he was denied a state-created liberty interest which resulted in a constitutional due process deprivation. By not timely raising the constitutional dimension, if any, of the claim, both at trial and on direct appeal, Lang deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also, Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

Dismissal for failure to exhaust is not appropriate because this claim is procedurally barred under state law. *See Coleman v. Thompson*, 501 U.S. 722 (1991) (citing *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998)). Under Florida law, claims that could have been or should have been preserved in the state trial court and then raised on appeal but were not, are procedurally barred. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.), *cert. denied*, 464 U.S. 922 (1983).

When Lang raised his stale claim in his December 2003 rule 3.850 motion, the state trial court summarily denied the motion because the claim could have been raised on direct appeal. The per curiam affirmance, although silent on this issue, rests on the same ground as the last reasoned decision addressing the question, in this case, the procedural bar, an adequate and independent state ground. *See Ylst v. Nunnemaker*, 501 U.S. 797

(1991)(adopting look through presumption); *Harmon v. Barton*, 894 F.2d 1268 (11th Cir.)(where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by last state court to rule on the question), *cert. denied*, 498 U.S. 832 (1990).

Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Murray*, 477 U.S. at 488.

The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,'

a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Schlup*, 513 U.S. at 324.

Lang did not show valid cause in state court to avoid his default. Any (further) cause allegation is now barred by the two year limitation of rule 3.850, see *Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834, (1990), and the state's successive petition doctrine. *See e.g., Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997)(successive postconviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence). He cannot therefore meet the *Wainwright v. Sykes* test. The cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of her procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Furthermore, Lang has not shown that a fundamental miscarriage of justice will occur if this Court does not rule on the merits of his claim. He has no new and reliable evidence of factual innocence of the crimes for which he stands convicted. Even if reached, Lang does not show the state decision resulted in other than a reasonable application of federal law as clearly established by the Supreme Court at the time. It is objectively reasonable to conclude the dictates of *Faretta* were met by the state court's inquiry of Lang before allowing him to represent himself at his jury trial.

Lang suggests he has a due process right resulting from a supposed state-created interest because of state procedures governing renewal of the offer of counsel. *See generally, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). The federal due process clause is not implicated here because a state-created right is not unqualified where state law

allows appellate courts to "cure the deprivation" through "harmless error" review. *Clemons v. Mississippi*, 494 U.S. 738, 746-47 (1990).

Even under state procedures, although the harmless error rule does not apply when a state trial court fails to conduct a proper *Faretta* inquiry, *State v. Young*, 626 So. 2d 655 (Fla. 1993), failure to renew the offer of counsel for trial after an adequate *Faretta* inquiry into self-representation at trial does not require per se reversal. *E.g., Lamb v. State*, 535 So. 2d 698 (Fla. 1st DCA 1988)(trial court satisfied requirements of Fla. R. Crim. P. 3.111(d)(5) where pretrial hearing on waiver of counsel addressed defendant's competence and ability to appear pro se at the trial stage and that trial occurred three weeks later was immaterial; rule did not place a time limitation on an offer and waiver of counsel; because there was no change in that critical stage, Fla. R. Crim. P. 3.111(d)(5) did not come into play and no error occurred).[6] Because any claimed defect was harmless in Lang's case, as the state maintained in the direct appeal, it is objectively reasonable to conclude Lang does not show he has a federal due process interest in any purported unqualified state-created right. Ground two does not warrant habeas corpus relief.

### Ground Three

Lang contends the State knowingly used perjured testimony, resulting in a due process deprivation. Lang asserts that the prosecution was aware the victim had said she did not see any scars or marks on the perpetrator's face, and contends the prosecutor

---

[6] *See also, e.g., Bloodsaw v. State,* 2007 Fla. App. LEXIS 2402 (Fla. 3rd DCA 2007)(although court was required to renew its offer of assistance of counsel at commencement of trial, noncompliance with rule was harmless error where standby counsel appeared with defendant at beginning of trial and assisted him during the trial, defendant did not indicate he wanted to terminate self-representation, he knowingly and intelligently waived counsel at a hearing at which standby counsel was appointed; and court renewed offer of counsel at a hearing 12 days before trial).

elicited testimony from the detective indicating the victim identified marks on Lang's face. Ground three is procedurally barred because Lang did not preserve and then raise the constitutional dimension of his claim on direct appeal.

Lang does not allege he was unaware at the time of trial of his claim of use of false testimony. Because the known claim could, if at all, have been raised at trial and on appeal, the claim was not cognizable in a postconviction motion in Florida. *See e.g., Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003) (substantive prosecutorial misconduct claims raised in a rule 3.850 motion were procedurally barred)(citing *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *Ogden v. State*, 494 So. 2d 280 (Fla. 2d DCA 1990)(defendant's allegation of possible perjury could have or should have been raised on appeal and was not proper basis for postconviction relief). The state trial court expressly applied the state's procedural rules in denying Lang's rule 3.850 claim that the state knowingly used perjured testimony. (See Resp. Ex. 7, which includes the December 2003, rule 3.850 motion and order thereon). The ensuing affirmance rests on independent and adequate procedural grounds barring federal review of ground three. *Harmon, supra.* Lang does not make the required showing to excuse his default.

Alternatively, Lang's claim fails scrutiny upon AEDPA review. In order to show a *Giglio v. United States*, 405 U.S. 150 (1972), violation, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material. The origins of the *Giglio* doctrine lie in *Napue v. Illinois*, 360 U.S. 264 (1959), which held a prosecutor's failure to

correct false testimony by the principal state witness he had received no promise of consideration in return for his testimony violated the defendant's Fourteenth Amendment due process rights and required a reversal of the judgment of conviction.

In Lang's case, he probed victim DeMarteeno at trial relative to her description of the perpetrator, eliciting she did not think she told the detective she saw his mole but did not remember, and she did not notice a scar. (E.g., Add 2 T 139) Her testimony further reflected, among other things, she noticed his eyes more. (Add 2 T 141) That the officer recalled the victim identified a mark does not establish the officer's testimony was false or that the state knowingly used false testimony. In any case, in view of the victim's unequivocal identification testimony, as well as the independent and ample evidence of his guilt, including, inter alia, Lang's incriminating statements to Dennis Howard (V 2 T 339-342) and discovery of a gun and mask in his vehicle on his arrest for a traffic violation (V 2 T 322), it is objectively reasonable to conclude Lang does not show the testimony could in any reasonable likelihood have affected the judgment of the jury. *Giglio*, 405 U.S. at 154. It is objectively reasonable to conclude Lang fails to show that his due process rights were violated. Ground three does not warrant habeas corpus relief

### Ground Four

Lang contends there was insufficient evidence to support his conviction for armed robbery with a deadly weapon. In his supporting facts, Lang asserts the weapon displayed to the victim was wrapped in a bag and could not constitute a deadly weapon under Florida law. This ground is procedurally barred in its entirety because Lang did not present the constitutional dimension of his claim in a timely manner at trial and on direct appeal. Lang

did not argue at trial and on appeal that denial of an acquittal would violate the Due Process Clause, which requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). Nor did he assert at trial and on direct appeal that the state did not meet the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In denying Lang's challenge to the sufficiency of the state's evidence in his December 2003, rule 3.850 motion, the state trial court indicated the matter was for the appellate courts, regardless of whether the applicable state district court of appeal was given the opportunity to address the claim. The citations in support make clear the state trial court was applying Florida's procedural rules which preclude collateral litigation of a claim that is or could be available for direct review.[7] The ensuing affirmance rests on independent and adequate procedural grounds applied by the state trial court in denying Lang's claim, foreclosing federal review of the claim. Lang does not make the required showing to overcome his procedural default. Alternatively, even if reviewed, arguendo, Lang does not make a threshold showing under the AEDPA's highly deferential standards of review. The limited inquiry is whether it is objectively reasonable to conclude the evidence presented, viewed in a light most favorable to the state, would have permitted any

---

[7] This is illuminated by the postconviction court's pointing to *Baker v. State*, 878 So. 2d 1236, 1243 (Fla. 2004), which reiterated, among other things, that rule 3.850 does not authorize relief based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence. In denying Lang's stale claim, the state trial court also cited to *Childers v. State*, 782 So. 2d 946, 947 (Fla. 4th DCA 2001), holding the movant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850. In addition, the state trial court relied on *Pedrosa v. State*, 420 So. 2d 908 (Fla. 2d DCA 1982), in which the state district court, looking to the state's ruling that denial of a rule 3.850 is proper where issues could have been or were raised on a direct appeal, held the movant could have raised his retention-of-jurisdiction issue on direct appeal and thus such was not cognizable on collateral attack. (Resp. Ex. 7, which includes rule 3.850 order on December, 2003, rule 3.850 motion).

rational trier of fact to find Lang guilty of the crime charged beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).[8]

In Florida, a "deadly weapon" has generally been defined to be one likely to produce death or great bodily injury. Whether or not the weapon involved is to be classed as "deadly" is a factual question to be resolved by the jury under appropriate instructions. *Dale v. State*, 703 So. 2d 1045, 1047 (Fla. 1997). Whether the state's evidence is sufficient under Florida law to withstand a motion for judgment of acquittal with regard to proof of a deadly weapon is solely a state law matter. Viewing the state's evidence of Lang's guilt in the light most favorable to the state, it is objectively reasonable to conclude a reasonable trier of fact could find the weapon employed in the robberies was a deadly weapon. The silent affirmance on the procedural rule on his sufficiency issue thus also resulted in a reasonable application of *Jackson* and a reasonable determination of the facts in light of the evidence. Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Lang's petition is denied, with prejudice. The Clerk is directed to enter judgment against Lang and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

---

[8] The federal court will not reweigh the evidence. *Jackson*, 443 U.S. at 319. The trier of fact is responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Although the facts as they exist in the record may support opposing inferences, a federal habeas corpus court must presume that the jury resolved such conflicts in favor of the prosecution and against the petitioner. *See Heath v. Jones*, 863 F.2d 815, 820 (11th Cir. 1989); *Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1991). In other words, the federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Heath*, 863 F.2d at 820 (citing *Jackson*, 443 U.S. at 326).

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 13, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
James E. Lang